**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRYL A. EDGE,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK R. DONAHOE, Postmaster General, United States Postal Service, a government agency,<br><br>Defendant. | Civil No. 15-cv-0353-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment (ECF No. 51) filed by Defendant Patrick R. Donahoe.

**I. Procedural History**

On February 19, 2015, Plaintiff Darryl A. Edge filed the Complaint against Defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service (the "Postal Service"). ECF No. 1 [hereinafter the "Complaint"]. The Complaint alleges that Defendant violated Title VII of the Civil Rights of Act of 1964 by discriminating against Plaintiff because of his race, retaliating against Plaintiff for engaging in protected activities, and creating a hostile work environment. *Id.* On July 28, 2017, Defendant filed the Motion for Summary Judgment. (ECF No. 51). On

September 14, 2017, Plaintiff filed an Opposition to the Motion for Summary Judgment. (ECF No. 57). On September 25, 2017, Defendant filed a Reply to Plaintiff's Opposition. (ECF No. 59).

## II. Statement of the Facts

### A. Background

Plaintiff is an African American. EEOC Decision, ECF No. 51-8 at 15. Plaintiff began working for the Postal Service in 1981. Declaration of Michael Miller, ECF No. 51-6 at ¶ 2. By 2011, Plaintiff was a Vehicle Maintenance Program Analyst (Level[1] 23). *Id.* at ¶ 4. In May 2011, the Postal Service initiated "a nationwide Reduction in Force (RIF)" and eliminated a number of positions, including Plaintiff's position as a Vehicle Maintenance Program Analyst. Declaration of Jennifer Wiggins, ECF No. 51-4 at ¶¶ 3, 6 [hereinafter "Wiggins Declaration")].

The Postal Service implemented a number of policies designed to reduce the impact of the RIF. First, the Postal Service allowed managers to "[r]eassign" employees into vacant positions as long as those positions were not "lower grade." Postal Service Employee and Labor Relations Manual, ECF No. 57 at 24. Plaintiff was not reassigned into a vacant position. *See* Wiggins Declaration.

### B. Phase 1

Next, the Postal Service accepted applications for "various positions in a competitive 'Phase 1' process []from June 14, 2011 through June 20, 2011. . . ." *Id.* at ¶ 11. Plaintiff applied to two positions during Phase 1: Manager, Maintenance Specialist ("MMS") (Level 23) and Manager, Maintenance Operations ("MMO") (Level 26). *Id.* at ¶ 13. Larry Munoz was responsible for selecting the employee that would fill those positions. *Id.* at ¶ 15.

Munoz is Filipino. *See* U.S. Equal Employment Opportunity Commission Decision, ECF No. 51-8 at 17 [hereinafter "EEOC Decision"]. Plaintiff stated in his deposition that Munoz frequently went on breaks with a Caucasian Postal Service

---

[1] "Level" refers to a positions rank within USPS's hierarchy of positions. The higher the level, the higher ranking the position.

1 employee named David Brown and another Filipino employee named Ron Progalidad. Deposition of Darryl A. Edge, ECF No. 51-8 at 89 [hereinafter "Edge Depostion"]. Plaintiff also stated in his deposition that he heard Progalidad encourage someone to apply for a position over the phone, and that he believes that the person Progalidad was speaking to was Patricio and that the position being discussed was the MMS 23 position. *Id.* at 91.

### 1. MMS Position

An MMS "[d]evelops, coordinates, implements, and evaluates national maintenance management policies, procedures and programs related to the maintenance, repair and modification of fixed and nonfixed mechanization, automation, customer service equipment, buildings and building systems." Postal Service Internal Publication of Job Posting 61021777, ECF No. 51-8 at 33. Plaintiff was one of six applicants for the position. Wiggins Declaration at ¶ 14. A Review Committee was used to assist in the selection process. *Id*. at ¶ 15. The Review Committee recommended three candidates, ranking them in the following order: (1) Plaintiff, (2) Gil Patricio, and (3) Tadashi Ervin. EEOC Decision, ECF No. 51-8 at 19. In July 2011, Munoz selected Patricio for the MMS position. Declaration of Larry Munoz, ECF No. 51-5 at ¶¶ 3, 8. Patricio, like Munoz, is Filipino. EEOC Decision, ECF No. 51-8 at 19.

Munoz states that "[t]he selection criteria [he] used was based upon the seven knowledge, skills, and abilities (KSAs) that were listed as requirements in the Job Posting for the position." Munoz Declaration at ¶ 7. Munoz states that he selected Patricio "because his application contained objective and verifiable accomplishments . . . that were superior to those in Plaintiff's application." *Id.* at ¶ 8. Munoz states that he focused on safety when choosing an MMS because "[m]aintenance department employees frequently work on and around equipment that can cause serious injury if safety procedures are not properly followed." *Id.* at ¶ 11. Patricio's application discussed safety in response to three questions. *See* Postal Service Data Overview for Application 61567068, ECF No. 51-8 at 36-38. Plaintiff's application does not discuss

safety. *See* Postal Service Data Overview for Application 61536145, ECF No. 51-8 at 45-46.

Munoz states that "[a]nother reason that [he] selected Mr. Patricio is that his written application contained specific examples of actions that he had personally taken that demonstrated his competency in each KSA[ while] Plaintiff's application contained no such example[s]." Munoz Declaration at ¶ 14. Munoz states that he

> also chose Mr. Patricio because he was a MMO just prior to being selected. . . . Therefore, he had recent, hands on experience with the type of maintenance work required by the position. . . . By contrast, Plaintiff's application reflected that Plaintiff had not been in Maintenance Operations since approximately March 2009. Prior to applying for the MMS position, Plaintiff worked as a Vehicle Maintenance Program Analyst. His expertise was more consistent with fleet managements, as opposed to building maintenance, mechanization, and automation, all of which are the core responsibilities of the MMS EAS-23 position.

*Id.* at ¶ 20-21.

### 2. MMO Position

An MMO "[m]anages area wide field maintenance support programs[;] processes and provides functional guidance relating to the maintenance of equipment, buildings and building systems[; p]lans and manages maintenance programs[;] and evaluates plant and equipment maintenance throughout the area in terms of efficiency, effectiveness and compliance with safety standards and national guidelines." Postal Service Internal Publication of Job Posting 60943419, ECF No. 51-8 at 54. Plaintiff was one of six applicants for the position. Wiggins Declaration at ¶ 18. The Review Committee recommended three candidates for the position: (1) Karen Padden, (2) Steve Mummy, and (3) Plaintiff. *Id.* at ¶ 19. Munoz interviewed the candidates. Munoz Declaration at ¶ 28. Munoz conducted his interview with Plaintiff over the telephone while driving, and the call was dropped multiple times. Edge Deposition, ECF No. 51-8 at 88.

In July 2011, Munoz selected Padden for the MMO position. Munoz Declaration at ¶¶ 3, 28. Munoz states that he selected Padden because (1) "she had a more well-rounded management background, including Plant management experience, finance,

and transportation," (2) "she had maintenance experience," (3) her "application gave more specific examples of accomplishments that she did herself, whereas Plaintiff's application gave only generic descriptions about the Maintenance Manager's responsibilities," (4) she had "executive-level experience" and Plaintiff did not, (5) she held a Level 25 position at the time of her application and Plaintiff held a Level 23 position, and (6) "she had a bachelor's degree in business and management, while Plaintiff had no degree." *Id.* at ¶¶ 29-34.

Plaintiff also was not selected for a temporary detail into the MMO position. *Id.* at ¶ 40. Plaintiff did not apply for the temporary detail into the MMO position. Edge Deposition, ECF No. 51-8 at 116. Munoz "had no knowledge that Plaintiff was interested in or had requested [the] temporary detail." Munoz Deposition at ¶ 40. Munoz selected Padden for the detail into the MMO position. *Id.* at ¶ 39.

### C. Phase 2

"For employees not selected for positions during 'Phase 1' selections, the [Postal Service] reviewed each candidate's profile and compared it to current vacant positions" with the intention of placing the remaining employees in the vacant positions. Wiggins Declaration at ¶ 11. Human Resources Analyst Jenni Wiggins reviewed Plaintiff's profile and notified him of open positions into which he could request a placement, including the Learning/Diversity Specialist position (Level 23) and the Manager, Maintenance position (Level 19). EEOC Decision, ECF No. 51-8 at 21. Wiggins is Filipina. *Id.* On July 22, 2011, Plaintiff emailed Wiggins stating that he wanted to be considered for both of these positions and that he preferred the Learning/Diversity Specialist position. *Id.* "The USPS Human Resources Department determined that Plaintiff was not qualified for the [Learning/Diversity Specialist] position . . . ." Wiggins Declaration at ¶¶ 22-23. "On July 29, 2011, Plaintiff requested a non-competitive placement into the open Manager, Maintenance (MM) EAS-19 position, which was granted." *Id.* at ¶ 26.

### D. EEO Process

"Plaintiff first contacted the USPS's Equal Employment Opportunity Office regarding [his] complaints of discrimination on or about August 8, 2011." *Id.* at ¶ 30. On November 8, 2011, Plaintiff submitted a formal Complaint of Discrimination to the USPS Equal Employment Opportunity Office. Complaint of Discrimination in the Postal Service, ECF No. 51-8 at 8-9. The form Plaintiff used to file his EEO Complaint had a section titled "Type of Discrimination You Are Alleging" that included nine boxes corresponding to different types of discrimination. *Id.* at 8. Plaintiff checked the box for "Race" and did not check the box for "Retaliation." *Id.* The allegations in Plaintiff's EEO Complaint were that:

> The Pacific Area Office Leadership began discriminating against me after returning from the care of my father. David Brown was assigned to replace me and when I returned was not assigned my full duties. I was told I would be working as the [MMS] as well. I was lead to believe I would get this job for several months. But the selecting official picked within his race a person less knowlegable [sic] and less qualified.

*Id.*

On November 9, 2011, Plaintiff amended his EEO Complaint to allege that he was discriminated against because of his race in three other instances: (1) when he was "not selected for detail into the [MMO] position," (2) when he was "not selected for the [MMO] position," and (3) when he was "demoted to a [MM] position." Acknowledgment of Amendment to Complaint, ECF No. 51-8 at 11. The Postal Service EEO's Acknowledgement of Amendment to Complaint stated

> The total issues now accepted for investigation include only the following:
>     You alleged discrimination based on Race (African American) when;
>         2. on, or around, July 11, 2011, you were not selected for a [MMS] position;
>         3. In, or around, May 2011, you were not selected for detail into the [MMO] position;
>         4. On, or around, July 11, 2011, you were not selected for the [MMO] position;
>         5. On an unspecified date, you were demoted to a [MM] position.

*Id.*

USPS filed a Motion for Decision Without a Hearing on October 9, 2012. EEOC Decision, ECF No. 51-8 at 16. The EEOC Administrative Judge granted USPS's motion, concluding that "[t]here is insufficient evidence to create an inference that [the Postal Service] discriminated against [Plaintiff] on the basis of race or color as to any of the issues in this complaint." *Id.* at 30.

## III. Administrative Exhaustion

### A. Contentions of the Parties

Plaintiff claims that Defendant violated Title VII of the Civil Rights of Act of 1964 by discriminating against him because of his race, retaliating against him for engaging in protected activities, and creating a hostile work environment. Complaint at 1. Plaintiff alleges that Defendant discriminated against him because of his race when he was not "placed" into the MMS position prior to Phase 1;[2] when he was not "select[ed]" for the MMS position or the MMO position during Phase 1; when he was not selected for the MMO detail; and when he was "demoted" to an MM position. Complaint at ¶¶ 19, 44.

Defendant contends that Plaintiff failed to exhaust his retaliation claim, his hostile work environment claim, and his claim that he was discriminated against because of his race when he was not reassigned into the MMS position prior to Phase 1. (ECF No. 51-1 at 22, 24; ECF No. 59 at 3).

Defendant does not contend that Plaintiff failed to exhaust his racial discrimination claims based on his nonselection for the MMS position, his nonselection for the MMO position, his nonselection for the MMO detail, and his demotion to the

---

[2] Plaintiff explicitly alleges that the Postal Service discriminated against him by not "selecting" him for the MMS position and by "demoting" him to the MM position, but does not explicitly allege that the Postal Service discriminated against him by not "placing" or "reassigning" into the MMS position. (ECF No. 1 ¶ 44). However, Plaintiff does allege that he "should have been placed non-competitively into the MMS (EAS-23) position." *Id.* at ¶ 19. Construed in the light most favorable to Plaintiff, the Complaint alleges that the Postal Service discriminated against Plaintiff by not placing him into the MMS position prior to the Phase 1 process.

MM position (collectively, the "Hiring Decisions"). Plaintiff administratively exhausted these claims, and the Court has jurisdiction over them. *See* Acknowledgment of Amendment to Complaint, ECF No. 51-8 at 11 (explicitly stating that the issues being investigated include whether the Postal Service discriminated against Plaintiff because of his race when it made the Hiring Decisions).

### B. Applicable Law

"In order to bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies." *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e–16(c); *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995)).

> Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite. The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation. The specific claims made in district court ordinarily must be presented to the EEOC. However, the district court has jurisdiction over any charges of discrimination that are "like or reasonably related to" the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations.

*Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

### C. Reassignment

Plaintiff's Complaint before this court alleges that the Postal Service discriminated against him by not reassigning him to the MMS position. Complaint at ¶ 19. Plaintiff's EEO Complaint states that he "was told [he] would be working as the [MMS] . . . [b]ut the selecting official picked within his race a person less knowlegable [sic] and less qualified." (ECF No. 51-8 at 8). The USPS EEO's Acknowledgement of Amendment to Complaint listed "[t]he total issues now accepted for investigation." *Id.* at 11. That list did not include whether the Postal Service discriminated against Plaintiff when it did not reassign him to the MMS position prior to the Phase 1 process, but did include whether the Postal Service discriminated against Plaintiff when "on, or around, July 11, 2011, [Plaintiff was] not selected for a [MMS] position." *Id.*

Plaintiff has not administratively exhausted his claim that he was discriminated against because of his race when he was not reassigned into the MMS position. Plaintiff came closest to raising that issue before the Postal Service EEOC when he alleged in his EEO Complaint that he "was told [he] would be working as the [MMS] . . . [b]ut the selecting official picked [a person] within his race." (ECF No. 51-8 at 8). While this statement very clearly alleges that Plaintiff was discriminated against when he was not selected for the MMS position, it does not clearly allege that Plaintiff was discriminated against when he was not reassigned into that position. Plaintiff explicitly referred to "the selecting official," not the reassigning official. *Id.* The Acknowledgement of Amendment to Complaint clarified that the Postal Service EEO would be investigating whether Plaintiff was discriminated against when "on, or around, July 11, 2011, [he was] not selected for a[n MMS] position," and not whether Plaintiff was discriminated against when he was not reassigned into that position at some earlier date. *See* Acknowledgment of Amendment to Complaint, ECF No. 51-8 at 11 (stating that "the total issues now accepted for investigation include only" those listed therein). It is reasonable to expect an investigation into whether Plaintiff was discriminated against when "on, or around, July 11, 2011, [he was] not selected for a[n

MMS] position," to focus on the Phase 1 selection process and the decision that occurred on that date. *Id.* Such an investigation could not "reasonably . . . be expected to grow" into an investigation of why Plaintiff was not reassigned into the MMS position prior to Phase 1. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).

The Court does not have jurisdiction over Plaintiff's claim that he was discriminated against because of his race when he was not reassigned into the MMS position.

**D. Retaliation**

Plaintiff's retaliation claim is also based on the Hiring Decisions. (ECF No. 1 at ¶ 51). In his Complaint before this Court, Plaintiff alleges that the Postal Service made the Hiring Decisions "in reprisal for Edge's opposition to practices made illegal by Title VII and because Edge made complaints of discrimination." *Id.* Specifically, Plaintiff alleges that the Postal Service "illegally retaliated against [him] by taking adverse actions against him because he reported the aforementioned racial discrimination." *Id.* at ¶ 53. In his EEO Complaint, Plaintiff did not allege that the Postal Service engaged in retaliation, nor did he check the box corresponding to "retaliation." *See* ECF No. 51-8 at 8. However, Plaintiff's EEO Complaint for racial discrimination is based on the exact same incidents as Plaintiff's retaliation claim before this court: the Hiring Decisions. *Compare id.*; ECF No. 1 at ¶ 51.

When deciding whether a Plaintiff has adequately exhausted a retaliation claim, a court asks whether the Plaintiff's current retaliation claim is reasonably related to the claim presented in the EEO Complaint. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003), *as amended* (Jan. 2, 2004). That test is satisfied if the Plaintiff's retaliation claim "fall[s] within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Id.* When an EEO complaint "does not contain the relevant legal theory of retaliation" but states another claim based on the allegedly retaliatory acts, an EEOC investigation into

that complaint can reasonably be expected to uncover any reports that the Plaintiff has filed concerning the persons identified in the complaint. *Id.* Such an investigation can also be expected to include an investigation into whether the acts mentioned in the EEO complaint were done in retaliation for the reports filed by the Plaintiff. *Id.* Consequently, to the extent Plaintiff alleges that the Hiring Decisions were made in retaliation for reports of racial discrimination that Plaintiff filed before the Hiring Decisions were made, Plaintiff's retaliation claim has been administratively exhausted. The Court has jurisdiction over Plaintiff's retaliation claim to the extent it is based on reports filed by Plaintiff prior to the Hiring Decisions.

On the other hand, an EEOC investigation into a complaint alleging that certain hiring decisions constituted racial discrimination cannot reasonably be expected to include an investigation into whether those hiring decisions were made in retaliation for complaints filed after they were made. Retaliation, by definition, involves a retaliatory act that occurs after an individual engages in a protected activity. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). The EEOC, therefore, cannot reasonably be expected to investigate whether a hiring decision was made in retaliation for an action taken after the hiring decision. Consequently, the Court does not have jurisdiction over Plaintiff's retaliation claim to the extent it is based on actions taken by Plaintiff after the Hiring Decisions were made.

### E. Hostile Work Environment

Plaintiff's Complaint before this Court alleges that "[t]he Postal Service's conduct as alleged above constituted a racially hostile and abusive work environment in violation of Title VII." (ECF No. 1 at ¶ 59). Construed in the light most favorable to the Plaintiff, Plaintiff's Complaint alleges that the Postal Service created a hostile work environment when (1) it made the Hiring Decisions and (2) "Mr. Munoz treated Edge differently than the other employees in maintenance at the Area Office." *Id.* at ¶ 27. Plaintiff's Complaint before this Court alleges that Mr. Munoz treated Edge

differently from other employees when he (1) "ma[d]e negative comments about [him] to others," (2) met or went on breaks with Brown and Progalidad and "specifically excluded Edge," and (3) "exclude[d] Edge from meetings, instructions, and assignments that he should have been involved with." *Id.* Plaintiff's EEO Complaint did not explicitly allege that the Postal Service created a hostile work environment. (ECF No. 51-8 at 8). The USPS EEO's Acknowledgement of Amendment to Complaint stated that the only "issues now accepted for investigation" were whether Plaintiff was discriminated against because of his race when the Postal Service made the Hiring Decisions. *Id.* at 11.

Plaintiff's hostile work environment claim has been administratively exhausted if it "fall[s] within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Vasquez*, 349 F.3d at 644. An EEOC investigation into a racial discrimination claim can be expected to encompass an investigation into a Plaintiff's hostile work environment claim if (1) the hostile work environment claim is based on facts that would have come to the EEOC's attention during its investigation of the claim for racial discrimination and (2) those facts "would . . . have put the EEO investigator on notice of a pattern of conduct 'sufficiently severe or pervasive' so as to create an 'abusive work environment.'" *Swinnie v. Geren*, 379 F. App'x 665, 667 (9th Cir. 2010) (quoting *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003)).

As is discussed in Section V, deciding Plaintiff's claim for racial discrimination based on the Hiring Decisions requires evaluating whether the Postal Service's justifications for the Hiring Decisions are pretext for discrimination. An investigation into whether the Postal Service's justifications for the Hiring Decisions are pretextual could reasonably have been expected to uncover the incidents that made Plaintiff believe that Munoz was biased against Plaintiff because of his race. In his Complaint before this Court, Plaintiff has alleged the following facts in support of his contention

that the Postal Service's proffered justifications for the Hiring Discriminations are pretext for racial discrimination: (1) Munoz "ma[d]e negative comments about [Plaintiff] to others," (2) Munoz went on breaks with Brown and Progalidad and "specifically excluded [Plaintiff]," and (3) Munoz "exclude[d Plaintiff] from meetings, instructions, and assignments that he should have been involved with." (ECF No. 1 at ¶ 27). The EEOC investigation into Plaintiff's EEO Complaint could reasonably have been expected to bring these alleged incidents to the attention of the EEO investigator. However, these alleged incidents would not "have put the EEO investigator on notice of a pattern of conduct sufficiently severe or pervasive so as to create an abusive work environment." *Swinnie*, 379 F. App'x 665 at 667 (9th Cir. 2010); *see Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 643-44 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (discussing the facts of different cases to explain why the acts about which the plaintiff had complained were not severe and pervasive enough to create a hostile work environment). Consequently, Plaintiff has not exhausted his hostile work environment claim. *See id*. The Court does not have jurisdiction over Plaintiff's hostile work environment claim.

**IV. Summary Judgment Standard**

A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence showing that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255.

**V. Discrimination**

Title VII racial discrimination claims based on hiring decisions proceed in three steps. First, the Plaintiff must establish a prima facie case of discrimination by showing that: (1) he belongs to a protected class, (2) he was qualified for the position, (3) he applied for the position and was not selected, and (4) the person selected for the position does not belong to the protected class. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

**1. MMS Position**

Defendant moves for summary judgment on Plaintiff's claim that the Postal Service discriminated against him because of his race by not selecting him for the MMS position during Phase 1. (ECF No. 51-1 at 15). For the purposes of the Motion for Summary Judgment, Defendant "concedes that Plaintiff can establish a prima facie case

of discrimination in connection with his non-selection for the MMS . . . position[]." *Id.* Defendant contends that "Munoz had legitimate, non-discriminatory reasons for selecting Mr. Patricio," specifically (1) "Patricio's focus on safety, which Plaintiff's application lacked," (2) "the specific relevant accomplishments that Mr. Patricio detailed in his application" as compared to Plaintiff's "generic statements" and lack of examples of personal accomplishments, and (3) "Patricio's more recent maintenance experience." *Id.* at 15-16. In his declaration, Munoz states

> I selected Mr. Patricio for the [MMS] position because his application contained objective and verifiable accomplishments regarding the seven KSAs that were superior to those in Plaintiff's application. . . .
> I gave special emphasis on . . . safety . . . because of the nature of work performed by maintenance department employees. . . . Mr. Patricio's application discussed safety in four of the seven KSAs (2, 4, 6, and 7). Plaintiff's application contained virtually no reference to safety.
> Another reason that I selected Mr. Patricio is that his written application contained specific examples of actions that he had personally taken that demonstrated his competency in each KSA. Plaintiff's application contained no such example. . . .
> I also chose Mr. Patricio because he was a MMO just prior to being selected. . . . Therefore, he had recent, hands on experience with the type of maintenance work required by the [MMS] position. . . . By contrast, Plaintiff's application reflected that Plaintiff had not been in Maintenance Operations since approximately March 2009. . . . His expertise was more consistent with fleet management, as opposed to building maintenance, mechanization, and automation, all of which are the core responsibilities of the MMS EAS-23 position.

(ECF No. 51-5 at 2-5). Defendant has articulated legitimate, non-discriminatory reasons for Munoz's decision to select Patricio, not Plaintiff, for the MMS position.

The parties dispute whether the evidence submitted to the Court is "sufficient to raise a triable issue of fact as to pretext." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). A triable issue of fact "exists where 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has stated that "very little[ ] evidence is

necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a fact-finder." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (alterations in original) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)). However, a plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). To defeat summary judgment, a plaintiff must submit either direct evidence of discrimination or evidence from which a reasonable jury could conclude "that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000)).

In this case, Plaintiff has not presented "direct evidence of discrimination, such as comments from supervisors betraying bias or animus against" African Americans. *Id.* There is evidence in the record that, (1) Munoz selected Patricio, who also is Filipino, for the MMS position, (2) the review committee recommended Plaintiff over Patricio for the MMS position, (3) Munoz went on breaks with Brown and Progalidad, and (4) Progalidad may have told Patricio to apply for the MMS position.

Plaintiff has failed to raise a triable issue of fact as to whether Munoz's stated reasons for selecting Patricio are pretext for racial discrimination. None of the evidence in the record suggests that Munoz's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011). The facts that Munoz took breaks with Progalidad and that Progalidad told Patricio to apply for the MMS position do not justify the conclusion that Munoz discriminated against Plaintiff because of his race. Defendant is entitled to summary judgment on Plaintiff's claim that he was

discriminated against because of his race when he was not selected for the MMS position.

### 2. MMO Position

Defendant moves for a summary judgment in his favor on Plaintiff's claim that the Postal Service discriminated against him because of his race by not selecting him for the MMO position. (ECF No. 51-1 at 15). For the purposes of the Motion for Summary Judgment, Defendant "concedes that Plaintiff can establish a prima facie case of discrimination in connection with his non-selection for the . . . MMO (EAS-26) position[]." *Id.*

Defendant contends that "Munoz had legitimate, non-discriminatory reasons for selecting someone else," for that position. *Id.* at 17. Defendant contends that "Munoz was impressed with Ms. Padden's executive experience, well-rounded management background . . . and with her bachelor's degree in business and management" and was not impressed with Plaintiff's application for the position, which "gave only generic descriptions of the Maintenance Manager's responsibilities." *Id.* In his declaration, Munoz states that he "chose Ms. Padden [for the MMO position] because she had a more well-rounded management background, including Plant management experience, finance, and transportation," and because her "application gave more specific examples of accomplishments" than Plaintiff's. (ECF No. 51-8 at 5-6). Munoz stated that he "also selected Ms. Padden because she had PCES (executive-level) experience, whereas Plaintiff had no such experience"; "because she was a level EAS-25 at the time of her application, whereas the Plaintiff was a level EAS-23"; and "because she had a bachelor's degree in business and management, while Plaintiff had no degree." *Id.* at 6. Defendant has articulated legitimate, non-discriminatory reasons for Munoz's decision to select Padden, not Plaintiff, for the MMS position.

Plaintiff alleges that Munoz's stated reasons for selecting Padden "were not the true reasons, but instead were pretext to hide the Postal Service and [his] discriminatory

animus." (ECF No. 1 at ¶ 44). Plaintiff supports this allegation by alleging that he "was better qualified than Ms. Padden for the MMO (EAS-26) position," *id.* at ¶ 35, and that the interview process for the MMO position was flawed, (ECF No. 57 at 7). Plaintiff has presented no evidence that objectively shows that he was better qualified than Padden for the MMO position. *Compare* ECF No. 51-8 at 57-62 (Padden's application for the MMO position) with ECF No. 51-8 at 64-70 (Plaintiff's application for the MMO position.). Plaintiff did state in his deposition that, when Munoz interviewed him for the MMO position, "he was driving and the phone kept getting disconnected so it really wasn't much of an interview . . . every time he would ask a question, it would drop out." *Id.* at 88. However, the facts that Munoz conducted his interview with Plaintiff while driving and that the call was dropped multiple times do not justify the conclusion that Munoz discriminated against Plaintiff because of his race. Defendant is entitled to summary judgment on Plaintiff's claim that he was discriminated against because of his race when he was not selected for the MMO position.

### 3. MMO Detail

Defendant moves for summary judgment on Plaintiff's claim that the Postal Service discriminated against him because of his race by not selecting him for the MMO detail. (ECF No. 51-1 at 18). Defendant contends that "Plaintiff cannot establish a prima facie case of discrimination with respect to this claim because he did not apply for the detail." *Id.* In his deposition, Plaintiff admitted that he did not apply for the detail. (ECF No. 51-8 at 116). Munoz stated in his Declaration that he "had no knowledge that Plaintiff was interested in or had requested a temporary detail into the MMO EAS-26 position." (ECF No. 51-5 at ¶ 40).

A plaintiff claiming that an employer discriminated against him because of his race by not selecting him for a position must establish that he or another member of his protected class applied for the position. *Gay v. Waiters' & Dairy Lunchmen's Union,*

*Local No. 30*, 694 F.2d 531, 548 (9th Cir. 1982). Plaintiff did not apply for the MMO detail, and has not produced evidence showing that any other African American applied for that detail. Consequently, Defendant is entitled to summary judgment on Plaintiff's racial discrimination claim based on the MMO detail.

### 4. "Demotion" to MM

Defendant moves for a summary judgment in his favor on Plaintiff's claim for racial discrimination based on his "demotion" to the MM position. Plaintiff's "demotion" occurred when he was placed into the MM position. However, construed in the light most favorable to the Plaintiff, the Complaint alleges that Plaintiff was discriminated against when he did not receive other, more preferable positions, not when he was placed into the MM Position. Two more preferable positions, MMS and MMO, are discussed above. The only other position that Plaintiff requested but did not receive was the Learning/Diversity Specialist position. *See* EEOC Decision, ECF No. 51-8 at 21.

The Postal Service has articulated a legitimate, nondiscriminatory justification for its decision not to place Plaintiff into the Learning/Diversity Specialist position: that "[t]he USPS Human Resources Department determined that Plaintiff was not qualified for the [Learning/Diversity Specialist] position." Wiggins Declaration at ¶¶ 22-23. Plaintiff has provided no evidence that suggests that the Postal Service's proffered justification is pretextual. Defendant is entitled to summary judgment on Plaintiff's claim that he was discriminated against because of his race when he was demoted to the MM position.

## VI. Retaliation

Defendant contends that he is entitled to summary judgment on Plaintiff's retaliation claim because "[t]he Postal Service took no adverse employment action against Plaintiff after he first contacted the EEO office on August 8, 2011." (ECF No. 51-1 at 23).

Plaintiff alleges that the Postal Service made the Hiring Decisions "in reprisal for Edge's opposition to practices made illegal by Title VII and because Edge made complaints of discrimination." *Id.* Specifically, Plaintiff alleges that the USPS "illegally retaliated against [him] by taking adverse actions against him because he reported the aforementioned racial discrimination." *Id.* at ¶ 53.

Under federal law, "No person shall be subject to retaliation for opposing any practice made unlawful by title VII of the Civil Rights Act (title VII) (42 U.S.C. 2000e et seq.) . . . or for participating in any stage of administrative or judicial proceedings under those statutes." 29 C.F.R. § 1614.101(b). This provision only protects individuals who "oppos[e]" an unlawful practice or "participat[e]" in administrative or judicial proceedings. *Id.* Plaintiff did not oppose an unlawful practice or participate in administrative or judicial proceedings until he contacted the Postal Service's EEO office on August 8, 2011. ECF No. 51-4 at 4; ECF No. 51-8 at 130. This occurred after the Hiring Decisions. Plaintiff, therefore, did not take any actions that triggered the protection of 29 C.F.R. § 1614.101(b) until after the Hiring Decisions were made. As discussed in Part III.D, the Court does not have jurisdiction over Plaintiff's retaliation claim to the extent that it is based on actions that Plaintiff took after the Hiring Decisions were made. Defendant is entitled to summary judgment on Plaintiff's claim for retaliation.

**VII. Conclusion**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 51) is GRANTED. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff.

DATED: December 21, 2017

**WILLIAM Q. HAYES**
United States District Judge